May it please the Court. Good morning, Your Honor. I'm James Lewis. Here on behalf of the appellant, Mr. Bobby Lee Marshall, in his claim for Social Security Disability benefits, and I'll be reserving the default two minutes for rebuttal. Mr. Marshall had a, I'm not going to go through the procedural history line by line in the briefs, but there were a few points that I wanted to bring up, Your Honor, and that was Mr. Marshall did have a hearing for Social Security benefits in 2020. First ALJ found that there was no substantial gainful activity since the time he alleged disability for benefits to the time that he was last insured for benefits. That first ALJ used the sequential evaluation process from the commissioner, and he found that my client suffered from pharyngitis, but most notably bipolar disorder. He did not do something that they call a psychiatric review technique because there was no mental health treatment notes for that time period. And reasoning that if there were no treatment records during that time period of December 31st of 97, when he alleged he became disabled, to June 30th of 1998, when he was last insured for disability benefits, it could have been all that severe. So we never got to those other steps that some other Social Security disability cases turn on, steps 3, 4, and 5. The Appeals Council affirmed, suit was filed in Federal District Court, a voluntary remand was offered by the government, and we took him up on that offer, so it goes back to the Appeals Council. The Appeals Council administrative judge finds that there was sufficient evidence to determine the severity of my client's bipolar disorder, and with that instruction, sent him back for a second hearing. Second hearing in front of a Social Security judge here in 2022, right here in North Carolina. That judge did not do that psychiatric review technique because that judge found that there was no medically determinable impairment at all, so there's no reason to judge the severity of it. And she gave specific reasons, but I would argue that while she gave specific reasons, the legitimacy or reasonableness of those reasons just don't pass muster. She said in basic terms that because there were no concurrent treatment records during that six month period of time, there was no direct evidence of my client's bipolar disorder. Mr. Lewis, there are no treatment records that predate 2005, are there? It doesn't look like the earliest treatment records come from the VA in 2005, and there are references to the bipolar diagnosis from the Army Memorandum in 1991 and from other references, you know, the family physician, but how do we get around that with the absence of medical or treatment records that predate 2005? Well, I'm glad we cut to the chase, Your Honor, because we do have three big problems in this case, and the first problem that I wanted to address with the court was this gap in treatment and what a court should do when it's faced with a gap in treatment. And what I would argue is that step two is a de minimis test designed to weed out groundless claims, that we can use our good sense and reason to determine what kind of shape my client was in before and what kind of shape my client was in. And whether that gap be seven years or two years or six months, we can still use the available information that we have to determine the severity of my client's impairment. So what do you think is your best evidence? My best evidence are the records that were provided. They're going to be the Dr. Toby letter, the Dr. Jackson letter. These are the administrative record. It's a big administrative record like a lot of disability claims are, but if we focus between 2348 to 2352, these are the letters. So, for example, he has the medical board in December 13th of 1990. They established a diagnosis. The diagnosis is not enough, but he also has manifested by a lack of stress tolerance, a tendency to become psychotic under stress. We also see Dr. Toby's note, mood swings, bizarre behavior, visual and auditory hallucinations, irritability, impulsiveness. Dr. Jackson on 2350 found mood swings, thought patterns up and down, poor sleep, spends money freely. Additional evidence, like from Dr. Jackson, February 1996, mood swings, not sleeping at night. This is medical documentation. The most recent one, February of 1996. Let me ask you this. None of what you described tells us that much about how it would have affected his activities of daily living, for example, or whether he was being treated during the covered period. There were references to lithium. What do we do with that? Because I think you're describing that there are cases about a gap in treatment, but I think that my question tends more toward was there treatment and what was the level of impairment in the record? Well, in the record, I don't believe that there was any treatment, although my client is not the best historian. That long ago, he wasn't in treatment during that period of time. That's the best effort of mine, trying to find records from the southwest, Texas, Oklahoma, Arkansas, that sort of thing. But we do see evidence of the impairment in his back in before the medical records show that his disability status was affected. That was in the, I believe it's at 2348. And so that would affect his ability to perform in the workplace if he became psychotic under stress. That might lead somebody to wonder, well, how much stress creates a psychotic episode? You've had to search for records. I've been searching for law, for precedent, for something that gives us something to work with. And the absence of records is a problem. What's the best authority you can point us to suggesting that we should do as much to fill in the gaps as this record would require us to do? Well, I don't know how much gaps I'm asking you to fill in. Well, you're asking for a lot of years, and you're asking us to require the agency to fill in a lot. And so if, I'm not sure what gives us the ability to tell the agency, you've got to get closer. You've got to do more to fill in this record than they've done so far. Well, one case that comes to my mind is the Glanton case that I referred to in the brief, where a gentleman did have a substantial gap in treatment, and the court did rule in Mr. Glanton's favor that would be gone, please. Yeah, so, Judge Gould, if I could ask you a question, please. Step two has always been viewed as a de minimis screening device. But my question is, who has the burden of showing there's a severe impairment? Is that burden on your client, or is that burden on the governor? I believe that burden is on the claimant, Your Honor, to show that there's at least a scintilla of evidence, a spark or a trace of evidence that there is a medically determinable impairment. And it doesn't have to be more than a scintilla, but it'd have to be more than a scintilla, but less than a probability. Correct. It lies somewhere in between, more likely than not, but more than scintilla evidence. And we argue that there is evidence that's beyond a spark or a trace of evidence. Thank you. Did you want to save some time for rebuttal? Yes, Your Honor. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Lindsay Payne on behalf of the Acting Commissioner of Social Security. I'd like to just jump right into the very poignant questions that we've had, because I think they get to the heart of the case. So, as the Court noted, we have more than just a gap in treatment here. The ALJ did not confine her analysis to just this brief six-month time period between Mr. Marshall's alleged onset of disability and the expiration of his disability insurance. She went all the way back to 1990, the earliest VA records that she had, and there simply are not objective examination findings as required by both the Act and the regulations, either during the time period, before the time period, or, as the Court noted, really until 2005. And, you know, while I agree with Mr. Lewis that his best evidence to try and frame something as objective findings in this record is Dr. Tobey's 1991 statement, it still does not meet the regulatory and statutory requirements for establishing a medically determinable impairment. So, it's a one-page memo offering the opinion that Mr. Marshall should not be available for worldwide deployment. But Dr. Tobey does not state that he has personally examined Mr. Marshall. It does not include anything that is purporting to be examination or testing findings. You know, he makes these statements about manifested by mood swings in a recent episode, but we have no indication of where that is coming from. And the Act is very clear that only the results of medically acceptable clinical or laboratory diagnostic techniques can meet this requirement for establishing a medically determinable impairment, and we simply don't know the source of what Dr. Tobey is saying there. We know the Appeals Council in the January 2022 decision or order observed that the state agency consultants found insufficient evidence to establish a medically determinable impairment in the relevant area. It goes on to say the record contains evidence that would allow an evaluation of the severity of the diagnosed bipolar disorder, and so it directed a reevaluation. Now, it didn't elaborate on what it was looking at. It did make reference to exhibits, and ultimately after the subsequent ALJ decision, which said it checked off those boxes, the Appeals Council said it checked off the boxes, but I was kind of struggling to figure out how the boxes were checked off. Where was there such a reevaluation with the Appeals Council saying there's enough there to do it? It seems to me what happened is the ALJ said there's not enough here to do it and stopped there, and so I got what seems to me to be a disconnect. Now, you know this field better than I do, but what am I missing? You know, so I think what's missing is that the first ALJ just really erred on the law and didn't follow the sequential evaluation process the way that he was supposed to. Even Opponent's opening argument here recognized that what that first ALJ was saying was there's no objective findings. He blew right past the requirement for how you establish a medically determinable impairment and then took the reasoning that should have been applied to the inquiry on a medically determinable impairment to say, well, it's not severe because there's no records. I would note that there's nothing in the district court's remand order or the stipulation between the parties in the earlier case that required the ALJ on remand to proceed further in the sequential evaluation, and the appeals counsel subsequently said, this follows the law, that the second ALJ did what she was supposed to do and no more was required. You know, as far as going back to Dr. Tobey and Dr. Jackson as well, you know, diving into this evidence, even if Dr. Tobey's letter could be seen as having objective evidence in it, it was still six and a half years before Mr. Marshall alleges he became disabled and we have this intervening evidence that in 1995, Mr. Marshall was diagnosed with malingering. Can I ask about that? Because as I understand it, we don't have the direct record of that from 1995. It comes from a progress note from 2005, I believe, right? But that same progress note also in various places references a 1990 hospitalization in Texas, another one in Oklahoma in 1994. It describes that he was given lithium. Why does that not supply some evidence that there were these hospitalizations based on, you know, manic episodes and that there was some form of treatment given? If we're going to put weight, or if the agency's going to put weight on a malingering diagnosis in a circumstantial way based on the progress note, why shouldn't there have been more weight given to those things? Because the simple fact is that none of it meets the statutory or regulatory requirements. I mean, the regulations specifically say that we will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment. So these later records referencing there has been treatment or there has been a diagnosis, we still don't have any examination findings. That was all self-reported, in other words? Yes, or it's some sort of historical report possibly that, you know, another doctor was able to look and see that that treatment happened, but we need the actual examination findings. And I think that the ALJ's consideration of the malingering evidence is best seen just as she really was trying to look at the entire longitudinal record and see can I find something that I can tie to this brief six-month time period to meet this requirement. And the consideration of the malingering evidence just goes to support the reasonableness of her conclusion. And to say the malingering did bug me a little bit because one element was that he said he couldn't sleep and he was sleeping. Well, I have nights where I don't think I slept, but my wife assured me that I made noises that sounded like sleeping for several hours. That malingering or just somebody who's mentally troubled and not perceiving the world as the rest of us do. No, it was more than that. Testing, it indicated that testing showed that Mr. Marshall was scoring at levels consistent with someone with end-stage dementia, essentially not functioning at all, and yet they were observing him functioning. He was also, you know, using a cane that he didn't appear to need and claiming he had hallucinations that they never saw any evidence of, despite him being inpatient and observed around the clock. But, again, I don't think we need to focus too much on the malingering consideration because it was just the ALJ trying to look out beyond this six-month time period and say, you know, is there really something that we can tie back into this six-month period? And she didn't find it. Mr. Lewis cited the Glandon case as the one that might go the furthest in helping his client's cause. What do you have to say about that precedent? That was exactly where I wanted to go. I think you might want to. But, crucially, Glandon and also Webb, cited by Mr. Marshall in his brief, do not involve whether an impairment is medically determinable. The Glandon decision specifically states that the ALJ there found a medically determinable impairment. It addresses only the severity requirement. They're two separate requirements at step two. So, Glandon is completely inapposite to this case. It addresses only severity. Same with Webb. And as far as, you know, the most on-point authority, I would point the court to Ukolov, which the court published in 2005 and found that a medical source statement that did not include objective examination findings could not establish a medically determinable impairment. I'd also point the court to Edlund v. Massonari, published in 2001 and cited in Mr. Marshall's opening brief. That case actually really is a nice demonstration of these two parts of step two. Because in Edlund, the court actually remanded because it found that the ALJ had improperly found a mental impairment to be non-severe. But the court also found that the ALJ had properly found one of the claimant's physical impairments to not be medically determinable. Because although there was a diagnosis, there were not objective findings supporting that diagnosis. So it really nicely sets out these two requirements for step two. Here, because Mr. Marshall has failed to identify objective evidence of the type required by the statute and the regulations, he failed to meet his burden, and it was his burden. The ALJ, therefore, reasonably ended the evaluation in step two. Unless the court has any other questions, we'd ask that they affirm. Thank you. Thank you, counsel. Mr. Lewis, we'll add a couple minutes to your time for rebuttal. Thank you. One side matter, and that would be that even though this case may go back to the 90s, Mr. Marshall cannot recover 24 years' worth of back pay. He applied for benefits in 2018. So even if it were to be established that the gentleman is disabled back in the 90s when he was last insured for benefits, he would not be entitled to that many decades of benefits. It will only go back 12 months from the time you get around to doing the application. That would be the first part. I'm glad that we discussed the malingering issue. I knew that if I didn't bring it up, someone else would. That's usually the case, but I knew my time was limited. Third, it doesn't seem to me like Mr. Marshall's bipolar disorder, his mental impairments, can get better. Sometimes they stay the same. Sometimes they stay the worst, but they rarely just go away. They're not as immutable as if a bear ate my hand. But if I was in the National Park and a bear ate my hand 30 years ago, I may not have proof that that happened. But everyone could see, Jim, where is your right hand? I think in a case like Mr. Marshall, where he does have this bipolar disorder before, during, and after the time period in question, I think we can still use what evidence we have in front of us to see what kind of shape my client was in, the severity that he was in during that time period. Thank you, Your Honor. Thank you. Thank you, Counsel, for your helpful arguments. The matter was then submitted.
judges: GOULD, CLIFTON, SANCHEZ